UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David Normann, | ) | |
| | ) | |
| Plaintiff, | ) | 2:12-cv-1963 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| DDRA Arrowhead Crossing, LLC, | ) | [Re: Motion at docket 26] |
| | ) | |
| Defendant. | ) | |

## I.  MOTION PRESENTED

At docket 26, defendant DDRA Arrowhead Crossing, LLC ("DDRA") asks the court to enforce its settlement agreement with plaintiff David Normann ("Normann"). Normann's response is at docket 30. DDRA's reply is at docket 31. Oral argument was requested, but it would not assist the court.

## II.  BACKGROUND

Normann sued DDRA in September of 2012. His complaint seeks relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* and the Arizonans with Disabilities Act, A.R.S. §41-1492. DDRA answered denying liability. An amended complaint was filed. On March 18, 2013, DDRA answered the amended complaint, again denying liability. Just over two weeks later, on April 3, 2013, DDRA

filed the pending motion seeking to enforce a settlement agreement which it claims was reached by the parties. There is no dispute about the fact that the parties entered settlement discussions. However, there is a marked difference of opinion about whether a settlement agreement was reached.

### III.  DISCUSSION

In order to resolve the issue at hand, it is necessary to march through many of the events which have transpired between counsel in this case. To begin with it is necessary to note that DDRA used both an Arizona law firm, Renaud Cook Drury Mesaros, PA, and a Florida law firm, Baker & Hostetler LLP, in dealing with Normann and his lawyer. The Arizona firm is the only one which has appeared in this litigation. The Florida firm, however, provided the draft Settlement Agreement discussed below. A copy of the draft Settlement Agreement along with copies of various communications between representatives of the parties are included in the motion papers.

Normann retained an expert who prepared a report concerning the condition of the real property which is the subject of this lawsuit. A copy of that report was provided to DDRA. Thereafter, Normann's lawyer sent an email to DDRA's counsel–both an Arizona and a Florida lawyer were addressed–dated February 21, 2013, which read in part as follows:

> Please let me know if we should expect some sort of response from your client to our expert report. We presently remain open to a negotiated settlement based on the report – one that includes both barrier removal and payment of Mr. Normann's fees and costs.[1]

Thereafter, on February 26, the Florida lawyer responded in a letter that was

---

[1] Doc. 30-1 at 2.

both emailed and mailed to Normann's counsel along with which the Florida lawyer transmitted the draft Settlement Agreement. In the cover letter, the Florida lawyer explained that the document should be familiar to Normann's lawyer, because "[t]he form is the same [one] we have used in the past."[2] Notably, the draft Settlement Agreement contained a provision which expressly provided for the payment of Normann's fees and costs.[3] The amount of fees and costs was left blank in the draft, so the next day Normann's lawyer responded in an email stating that he was preparing "a fee and cost demand."[4] On February 28, Normann's lawyer emailed the Florida lawyer that the attorney fees were of $7,177.08, costs were $4,377.90, and future fees and costs were $1,500.00 making for a total demand of $13,054.98.[5] That communication also suggested various changes to and excisions from the text of the draft Settlement Agreement.

After reviewing the February 28 communication, the Florida lawyer responded on March 8, writing that DDRA agreed to all the suggested changes, except that the amount of attorney fees remained for resolution.[6] It appears that the Florida lawyer and Normann's lawyer also had a telephone conversation on March 8, for in an email dated March 12, Normann's counsel indicated that in a follow up to a March 8 conversation,

---

[2]*Doc.* 27-1 at p. 1.

[3]*Id.* at p. 4 ¶ 5.

[4]Doc. 29-1 at p. 1.

[5]*Id.* at pp. 2-3.

[6]*Id.* at p. 4 (a duplicate also appears at p. 5.)

his client would agree to reduce the total for attorney fees and costs to $12,250.[7] The email stated that the offer to accept $12,250 would expire on March 14. It also included supporting fee and cost data for examination by the Florida lawyer. The Florida lawyer responded on March 12, in an email questioning some of the supporting data and offering to pay $9,100. On March 13, 2013, Normann's lawyer responded: "To get this done, we will go down to $12,000 as a final offer–together with all other terms previously agreed upon. This offer will expire at the close of business Thursday, March 14, 2013."[8]

In light of the parties' inability to agree on the fees and costs, the Florida lawyer emailed a proposal on March 13 which would rewrite paragraph 5 of the draft Settlement Agreement so that it replaced a statement of the amount of fees and costs with a procedure for determining what the amount would be.[9] To this Normann's lawyer responded the same day:

> No deal. We have not resolved all aspects of the remdial work. As I have repeatedly stated, the deal on the timing of the remedial work was contingent on a comprehensive settlement, including resolution of fees and costs. All aspects must be resolved simultaneously. We will not agree to a two-year barrier removal time frame without resolving fees and costs at the same time.[10]

Norman's lawyer also proposed several options to break the log jam on the amount of fees and costs which would lower the amount in exchange for shortening the time for

---

[7]*Id*. at p. 6

[8]*Id.* at p. 12.

[9]*Id*. at p. 13.

[10]*Id.* at p. 14

-4-

barrier removal. The Florida lawyer responded with an email which said he would get back to Normann's lawyer "one way or another before the deadline you gave me."[11] This generated a response from Normann's lawyer addressed to both the Florida lawyer and one of the Arizona lawyers indicating he would deal directly with the Arizona lawyer, because in his view the Florida lawyer had completely overlooked the "no deal" statement in an earlier communication.

After Normann's lawyer advised Arizona counsel for DDRA that he wished to get the case moving by way of discovery activity, the Arizona lawyer acknowledged that he had been out of the loop, but upon reviewing the various emails it appeared to him that Normann's lawyer and the Florida lawyer had "agreed on everything except your attorneys' fees and costs."[12] The court fully agrees with this assessment. The record amply demonstrates that at all times, the parties effort was to settle all issues including the amount of fees and costs to be paid. The record also amply demonstrates that they were unable to reach an agreement.

To support its position, DDRA first makes a scurrilous attack on Normann's lawyer pointing out that he has represented Normann in 36 disability act cases in this court. An examination of the court's records shows that statement to be true, but it is neither relevant nor proper. Those other cases have no bearing on the issue before the court in this case. There is no stigma associated with bringing numerous lawsuits, so long as they do not disclose a pattern of frivolous litigation. No such pattern emerges

---

[11]*Id*. at p. 15.

[12]*Id*. at p. 18.

from the 36 cases, a large majority of which have been settled on terms acceptable to both sides.

Seeking to bolster its attempt to paint a picture of Normann's counsel as a litigious scalawag, DDRA points to the decision by Judge Bolton in *George v. Arizona Mills, LLC.*[13] This court has reviewed Judge Bolton's decision and the docket in that case. Having done, so this court agrees with Normann's lawyer that the facts in *Arizona Mills* establish that it is distinguishable and offers no instruction pertinent to the dispute at hand–although this court also finds that Normann's lawyer is too grudging in accepting the correctness of Judge Bolton's decision.

DDRA also rummages around in the actions taken by the parties leading up to the preparation of Normann's expert report. Even if it is true that Normann or his lawyer did not pursue the case in the most efficient or cost-effective manner, that has no bearing on whether or not the parties actually reached a settlement.

Next, DDRA asserts that the amount of attorney fees and costs was not a material term of the settlement. That may be true in some cases including some cited by DDRA. However, for purposes of deciding what someone will demand by way of a settlement materiality is in the eye of each settling party. Moreover, just how material the amount of fees and costs actually is to both sides in this case is clearly disclosed in the exchanges laid out above. Throughout, Normann has maintained that he wanted a "complete" settlement which necessarily had to include an agreement on fees and costs. While the difference between Normann's lowest offer with respect to fees and

---

[13]Case No. 2:09-cv-0089 SRB (D. Ariz. 2009).

costs the highest amount offered by DDRA is not a lot of money, that difference was sufficiently material to DDRA that it walked away from the settlement in order to save a couple of thousand dollars.  It may be true that the parties will both now expend substantially more funds to resolve this dispute, but the fault lies as much with DDRA as with Normann.

DDRA also contends that the fee demand is unreasonable.  DDRA says Normann demanded payment for future expenses, that his lawyer indulged in excessive billing practices and that some of the costs demanded are not recoverable costs.  Even if all that is true, it has no bearing on the question whether the parties reached a settlement.

In its reply DDRA advances several points.  DDRA contends first that Normann cannot rely on a course of dealing to help support his position.  Even if that is true, which seems somewhat doubtful to the court given the Florida lawyer's involvement in other disability act cases involving DDRA, it makes no difference.  There is no need to resort to a course of dealing here.  The undisputed facts reveal there was never an agreed settlement.

In its reply DDRA also urges that the February 21 email is not part of the parties negotiations.  In all candor, the court cannot conceive how DDRA's counsel can make that statement.  That email plainly represents the first step in the negotiations and lays out quite clearly Normann's position on what must be in any settlement.

DDRA also urges that there is no ambiguity in the parties' settlement negotiations.  The court agrees.  It is quite clear that Normann was negotiating for a settlement which included his fees and costs and DDRA was unwilling to agree to the

numbers advanced by Normann.

Finally, DDRA bemoans the fact that failure to grant the motion to enforce the settlement agreement will allow the case to proceed increasing the cost of the litigation significantly and will likely require a hearing to establish what fees and costs Normann will recover.  That would be unfortunate, but that certainly happens in many lawsuits.  It is no reason to force a "settlement" on a party who never agreed to a settlement.

## IV.  CONCLUSION

For the reasons above, the motion at docket 26 is **DENIED**.  The suspended pre-trial deadlines begin running again on the date this order is filed.

DATED this 11th day of June 2013.

/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE